## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

KINGDOM OF BELGIUM,
FEDERAL PUBLIC SERVICE FINANCE
PENSION PLAN LITIGATION

Lead Case: No. 21 Civ. 6392 (JGK)

Member Case:
   No. 21 Civ. 6399 (JGK)

### AMENDED COMPLAINT (TRADEN)

Plaintiff Kingdom of Belgium, Federal Public Service Finance ("FPSF Belgium"), for its

Complaint against Defendants Traden Investments Pension Plan ("Traden"), Raubritter LLC

Pension Plan ("Raubritter"), Rajan Investments LLC Pension Plan ("Rajan"), Remece

Investments LLC Pension Plan ("Remece"), Laegeler Asset Management Pension Plan Trust

("Laegeler"), DFL Investments Pension Plan ("DFL"), 2321 Capital Pension Plan ("2321

Capital"), Davin Investments Pension Plan ("Davin"), Mill River Capital Management Pension

Plan ("Mill River"), Tarvos Pension Plan ("Tarvos"), Clove Pension Plan ("Clove"), Mazagran

Pension Plan ("Mazagran"), Pleasant Lake Productions Pension Plan ("Pleasant Lake"), Carrick

Holdings Pension Plan ("Carrick"), Alden Investments Pension Plan ("Alden"), Azalea Pension

Plan ("Azalea"), Bowline Management Pension Plan ("Bowline"), Adam LaRosa, FGC

Securities LLC ("FGC Securities") and Stephen Wheeler (collectively, "Defendants"), alleges by

its undersigned attorneys as follows:

### Nature of the Case

1.      Plaintiff FPSF Belgium is the agency of the government of the Kingdom of

Belgium ("Belgium") responsible for, among other things, the assessment and collection of

Belgian taxes.  FPSF Belgium is the Belgian equivalent of the United States Treasury
Department.

2.       This case arises from a fraudulent scheme that caused FPSF Belgium to pay large
amounts of money to putative pension plans in the United States claiming to be owed tax refunds
relating to corporate dividends.  The Defendants in this action participated in the scheme as
primary violators or aiders and abettors.

3.       The scheme took advantage of a tax refund arrangement between Belgium and the
United States.  Under Belgian law, Belgian companies are required to withhold a 25% tax on
dividends paid to their shareholders.  However, under a tax treaty between Belgium and the
United States, this withheld amount is reimbursable to U.S. shareholders that meet certain
qualifications.  In particular, taxpayers that qualify as tax-exempt pension funds under U.S. law
may be entitled to a full refund.

4.       Defendant LaRosa used a scheme to mislead FPSF Belgium into paying out
"refunds" of taxes that were never paid.  To accomplish this end, he employed a variety of
fictitious pension plans, including Defendants Traden, Raubritter, Rajan, Remece, Laegeler,
DFL, 2321 Capital, Davin, Mill River, Tarvos, Clove, Mazagran, Pleasant Lake, Carrick, Alden,
Azalea and Bowline and non-parties RJM Capital Pension Plan ("RJM Capital"), Bernina
Pension Plan Trust ("Bernina"), Next Level Pension Plan Trust ("Next Level"), Calypso
Investments Pension Plan ("Calypso"), Spirit on the Water Pension Plan ("Spirit on the Water")
and Batavia Capital Pension Plan ("Batavia").

5.       LaRosa created the appearance that these plans were bona fide U.S. pension plans
that owned shares in one or more Belgian companies for which dividends had been paid and

dividend taxes had been withheld.  LaRosa then caused each of these plans to request refunds in connection with those purportedly withheld dividend taxes.

6.      These refund applications were fraudulent because these plans were not bona fide pension plans, they did not own the shares they claimed to own and they did not earn the dividends they claimed to have earned.  In reality, these plans were nothing more than alter egos of LaRosa.

7.      Defendants FGC Securities and Stephen Wheeler aided and abetted this fraud. They knowingly provided substantial assistance by, among other things, creating false and misleading documentation in connection with the refund claims.

8.      In reliance on the false and misleading refund claims, FPSF Belgium paid Defendants a total of €75,792,383, or approximately $85,645,392 at the current exchange rate. FPSF Belgium has been damaged in that amount, plus interest, as well as other costs and expenses incurred investigating the fraud.

**Parties**

9.      Plaintiff FPSF Belgium is the agency of the Belgian government charged with the assessment and collection of Belgian taxes.  FPSF Belgium is located at Boulevard du Roi Albert II, 33, bus 555, 1030 Brussels, Belgium.  FPSF Belgium is an agency of a foreign state under the U.S. Foreign Sovereign Immunities Act.

10.     Defendant Traden is a purported trust recognized as a tax resident by the U.S. Internal Revenue Service ("IRS").  In submissions to FPSF Belgium, the address listed for Traden is 40 West 57th Street, 20th Floor, New York, NY 10019.  On information and belief, to the extent Traden has any real existence, each purported participant, member or trustee of Traden is a citizen of a state of the United States.

11.     Defendant Raubritter is a purported trust recognized as a tax resident by the IRS. In submissions to FPSF Belgium, the address listed for Raubritter is 160 Central Park South, #1726, New York, NY 10019.  On information and belief, to the extent Raubritter has any real existence, each purported participant, member or trustee of Raubritter is a citizen of a state of the United States.

12.     Defendant Rajan is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Rajan is 4506 West Hutchinson, Chicago, IL 60641.  On information and belief, to the extent Rajan has any real existence, each purported participant, member or trustee of Rajan is a citizen of a state of the United States.

13.     Defendant Remece is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Remece is 40 West 57th Street, 20th Floor, New York, NY 10019.  On information and belief, to the extent Remece has any real existence, each purported participant, member or trustee of Remece is a citizen of a state of the United States.

14.     Defendant Laegeler is a purported trust recognized as a tax resident by the IRS. In submissions to FPSF Belgium, the address listed for Laegeler is 441 W Menomonee Street, Chicago, IL 60614.  On information and belief, to the extent Laegeler has any real existence, each purported participant, member or trustee of Laegeler is a citizen of a state of the United States.

15.     Defendant DFL is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for DFL is 11 Hughes Street, Rockville Centre, NY 11570.  On information and belief, to the extent DFL has any real existence, each purported participant, member or trustee of DFL is a citizen of a state of the United States

16.     Defendant 2321 Capital is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for 2321 Capital is 23 East 10th Street, Apt. 220, New York, NY 10003.  On information and belief, to the extent 2321 Capital has any real existence, each purported participant, member or trustee of 2321 Capital is a citizen of a state of the United States

17.     Defendant Davin is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Davin is 77 Fifth Avenue, Suite 17D, New York, NY 10003.  On information and belief, to the extent Davin has any real existence, each purported participant, member or trustee of Davin is a citizen of a state of the United States.

18.     Defendant Mill River is a purported trust recognized as a tax resident by the IRS. In submissions to FPSF Belgium, the address listed for Mill River is 40 West 57th Street, 20th Floor, New York, NY 10019.  On information and belief, to the extent Mill River has any real existence, each purported participant, member or trustee of Mill River is a citizen of a state of the United States.

19.     Defendant Tarvos is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Tarvos is 30 Frost Creek Drive, Locust Valley, NY 11560.  On information and belief, to the extent Tarvos has any real existence, each purported participant, member or trustee of Tarvos is a citizen of a state of the United States.

20.     Defendant Clove is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Clove is 27 Sage Street, Holmdel, NJ 07738.  On information and belief, to the extent Clove has any real existence, each purported participant, member or trustee of Clove is a citizen of a state of the United States.

21.      Defendant Mazagran is a purported trust recognized as a tax resident by the IRS. In submissions to FPSF Belgium, the address listed for Mazagran is 8 River Terrace, New York, NY 10282.  On information and belief, to the extent Mazagran has any real existence, each purported participant, member or trustee of Mazagran is a citizen of a state of the United States.

22.      Defendant Pleasant Lake is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Pleasant Lake is 56 East 80th Street, New York, NY 10075.  On information and belief, to the extent Pleasant Lake has any real existence, each purported participant, member or trustee of Pleasant Lake is a citizen of a state of the United States.

23.      Defendant Carrick is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Carrick is 56 East 80th Street, New York, NY 10075.  On information and belief, to the extent Carrick has any real existence, each purported participant, member or trustee of Carrick is a citizen of a state of the United States.

24.      Defendant Alden is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Alden is 8 River Terrace, New York, NY 10282.  On information and belief, to the extent Alden has any real existence, each purported participant, member or trustee of Alden is a citizen of a state of the United States.

25.      Defendant Azalea is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Azalea is 30 Frost Creek Drive, Locust Valley, NY 11560.  On information and belief, to the extent Azalea has any real existence, each purported participant, member or trustee of Azalea is a citizen of a state of the United States.

26.      Defendant Bowline is a purported trust recognized as a tax resident by the IRS.  In submissions to FPSF Belgium, the address listed for Bowline is 66 West 88th Street, Unit 5B,

New York, NY 10024.  On information and belief, to the extent Bowline has any real existence, each purported participant, member or trustee of Bowline is a citizen of a state of the United States.

27.     Defendant Adam LaRosa is a natural person who is a citizen of the state of New Jersey.

28.     Defendants Traden, Raubritter, Rajan, Remece, Laegeler, Bernina, DFL, 2321 Capital, Davin, Mill River, Tarvos, Clove, Mazagran, Pleasant Lake, Carrick, Alden, Azalea and Bowline and non-parties RJM Capital, Bernina, Next Level, Calypso, Spirit on the Water and Batavia are hereinafter referred to as the "Refund Claimants."

29.     Defendant FGC Securities is a limited liability company organized under the laws of the State of Delaware and with its principal place of business in the State of New York.  On information and belief, the sole member of FGC Securities is FGC Holdings LLC ("FGC Holdings").  FGC Holdings is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of New York.  On information and belief, the members of FGC Holdings are John Foley and Demetrios Lyristis, both of whom are natural persons who are citizens of the State of New York.

30.     Defendant Stephen Wheeler is a natural person who is a citizen of the State of New Jersey.  At all relevant times, he was the head of operations for FGC Securities.

### Jurisdiction and Venue

31.     This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332(a)(4) because the matter in controversy exceeds the sum or value of $75,000 and is between an agency of a foreign state as plaintiff and citizens of a state or of different states.

32.     This Court has personal jurisdiction over each of the Defendants.  The claims in this action arise from the transaction of business in New York, commission of torts in New York and/or use of real property situated in New York.  In addition, some of the Defendants are residents of New York.

33.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

**Factual Background**

**A.  Belgian Dividend Taxation.**

34.     Dividends paid by Belgian companies are taxed at the rate of 25% under Belgian law.  Such taxes are collected through a withholding system.  At the time each dividend is paid, the Belgian company withholds 25% and transfers that amount to FPSF Belgium.  The company then pays the net amount (the dividend minus the tax) to its shareholders.

35.     Under a tax treaty between the United States and Belgium, tax-exempt residents of the United States, including pension plans, are entitled to refunds of any withholding tax on dividends.  To obtain a refund, a pension plan must submit an application to FPSF Belgium with proof of its tax-exempt status and its ownership of a dividend payment that resulted in withholding.

36.     The criteria for tax-exempt status in the United States are set forth principally in Sections 401(a) and 501(a) of the Internal Revenue Code, as well as applicable regulations thereunder.  Among other things, a tax-exempt pension plan must be for the "exclusive benefit" of an entity's employees or their beneficiaries and must be funded by contributions from the employer or employees.

37.     Moreover, a pension plan can receive a full refund only where the dividends at issue are not derived from the carrying on of a business by the pension fund or through an associated enterprise.

**B.  Defendants' Fraudulent Scheme.**

38.     Beginning in or about 2012, Defendant LaRosa participated in a scheme to submit fraudulent tax refund claims to FPSF Belgium.  The scheme involved the registration of U.S. tax residents that would pose as qualified U.S. pension plans.  These plans would represent to FPSF Belgium that they were tax-exempt pension plans and, using misleading documentation, would represent that they owned shares in and received dividends from Belgian companies, thereby justifying payment from FPSF Belgium of amounts supposedly withheld as dividend taxes.

39.     The Refund Claimants were purported pension plans used in this scheme.  On information and belief, these plans were not associated with any legitimate employer, they were not funded by employer or employee contributions and they do not exist for the exclusive benefit of employees and their beneficiaries.  Instead, these plans were used principally for the benefit of LaRosa and other participants in the fraud.  LaRosa dominated and controlled these plans and caused the plans to submit fraudulent refund claims to FPSF Belgium.

40.     In submissions to FPSF Belgium, Traden listed its address as 40 West 57th Street, 20th Floor, New York, NY 10019.  At the time, that address was occupied by non-party Argre Management LLC ("Argre"), a financial services firm.  LaRosa was a partner at Argre and used the 40 West 57th Street address to give Traden a false appearance of legitimacy.  The same address was used for other sham pension plans, including Remece and Mill River, in connection with other fraudulent tax refund requests to FPSF Belgium and other tax authorities.

41.     Some of the documentation submitted to FPSF Belgium also listed Traden's address as 27 Sage Street, Holmdel, NJ 07733.  On information and belief, that address is the personal residence of LaRosa.  In submissions to FPSF Belgium, Clove provided the same address.

42.     Other Refund Claimants used the addresses of other participants in the fraud.  For example, Mazagran used the address of non-party Jerome L'Hote, Pleasant Lake and Carrick used the address of non-party Matthew Stein and 2321 Capital and Bowline used the address of non-party Luke McGee.

43.     In addition to creating the appearance that the Refund Claimants were legitimate pension plans, the scheme also depended on creating the appearance that the Refund Claimants owned shares in Belgian companies and received related dividends.  To accomplish this, Defendants worked with various share custodians and brokers to obtain the false and misleading documentation.

44.     These other participants in the fraud included Defendants FGC Securities and Stephen Wheeler, FGC Securities' head of operations, as well as non-party Solo Capital Partners LLP ("Solo Capital").  For example, FGC Securities and Wheeler provided false and misleading documentation in connection with refund applications for Traden, Raubritter, Rajan, Remece, 2321 Capital, DFL and Davin.

45.     Finally, to submit the required paperwork to FPSF Belgium, the Refund Claimants used the services of tax reclaim agents called Acupay System LLC ("Acupay") and Goal Taxback Ltd. ("Goal Taxback").  To formalize this role, LaRosa signed powers of attorney that authorized Acupay or Goal Taxback to provide tax services, including requesting and collecting tax refunds from foreign tax authorities on behalf of the Refund Claimants.

46.     For example, in the case of Traden, LaRosa signed a "Special Power of Attorney" dated March 21, 2013, which authorized Goal Taxback to act for Traden.  LaRosa signed as "authorised signer" for Traden.

**C. Defendants' False Representations to FPSF Belgium.**

47.     From 2012 to 2015, Defendants carried out their scheme to defraud FPSF Belgium by submitting tax refund claims through Acupay or Goal Taxback on behalf of each of the Refund Claimants.  Each claim included a cover letter from Acupay or Goal Taxback, a tax refund claim form, documentation purporting to show the Refund Claimant's share ownership and receipt of dividends, a power of attorney signed by LaRosa and a statement from the IRS purporting to certify that each Refund Claimant was a tax-exempt U.S. pension plan.

48.     Charts identifying the refund claims made by each of the Refund Claimants are attached as Exhibit A-W.  Each chart shows the date of the application, the Belgian company in which the Refund Claimant supposedly owned shares and the requested refund amount.

49.     Each of these refund claims contained numerous false and misleading representations, as described in more detail below.

**1.   Misrepresentations of Pension Plan Status.**

50.     Each refund claim on behalf of the Refund Claimants represented that these plans were legitimate pension plans that qualified for tax-exempt status under U.S. law.

51.     For example, the claims for Traden included express statements by Goal Taxback that Traden was a U.S. pension plan, and that it was seeking a full refund on that basis.

52.     In addition, each request included a statement from the IRS for each Refund Claimant certifying that "to the best of our knowledge, the above-named entity is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the U.S.

Internal Revenue Code, which is exempt from U.S. taxation under section 501(a) . . . ."  This type of IRS statement is called a Form 6166, which the IRS provides to U.S. tax residents upon request.  The IRS does so based on information provided by the applicant and without an independent determination of the entity's status.  On information and belief, the Refund Claimants and LaRosa procured these IRS statements by providing the IRS with false and misleading information.  LaRosa caused Acupay or Goal Taxback to include these IRS statements in the tax refund requests.

53.     The statements in the refund claims that the Refund Claimants were pension plans were false.  These entities were not pension plans because, among other reasons, they were not associated with any legitimate employer, they were not funded by employer or employee contributions and they did not exist for the exclusive benefit of employees and their beneficiaries.

**2.   Misrepresentations of Ownership of Shares and Dividends.**

54.     Each refund claim represented that a Refund Claimant owned shares in a Belgian company and had received dividends in connection with its shareholding.

55.     Each refund claim form submitted on behalf of a Refund Claimant identifies the Belgian company in which the Refund Claimant supposedly owned shares, states the number of shares and states the net dividend that each Refund Claimant supposedly received.

56.     Each of the refund claims also includes documentation from one or more brokers supposedly showing the Refund Claimant's purchase of the relevant shares.  For example, for refund claims made on behalf of Traden, FGC Securities provided "cash equity confirmations" purporting to show share purchases by Traden.  These documents were signed by Defendant Wheeler.

57.     In addition, each refund claim included a purported "dividend credit advice" from Solo Capital.  In this document, Solo Capital stated that it was crediting the Refund Claimant's account to reflect payment of dividends in connection with the relevant shares.  The document purported to describe, among other things, the company in which the Refund Claimant supposedly owned shares, the number of shares and their international securities identification number (or "ISIN"), the gross dividend amount, the tax withheld and the net dividend.

58.     The statements concerning ownership of shares and dividends by the Refund Claimants were false.  In fact, the Refund Claimants did not purchase or own the shares in question, did not receive dividends in connection therewith and were not entitled to any refund. To the extent the Refund Claimants were involved in any purported transaction involving a share purchase or receipt of dividends relating to these securities, any such transactions were shams designed to create the false appearance that the Refund Claimants owned the shares, received dividends, and/or were entitled to a refund.

**D.  Payments by FPSF Belgium.**

59.     In reasonable reliance on the various false statements made in each of the refund requests described above, FPSF Belgium paid the requested refund amounts to the Refund Claimants.  These payments generally were made several months after the relevant refund request.  The total amounts paid to each Refund Claimant are as follows:

| Refund Claimant | Total Payments |
|---|---:|
| Traden | €6,032,105 |
| Raubritter | €5,932,731 |
| RJM Capital | €5,864,352 |
| Rajan | €5,617,740 |

| | |
|---|---|
| Remece | €5,304,753 |
| Laegeler | €5,096,207 |
| Bernina | €4,898,615 |
| DFL | €4,605,332 |
| 2321 Capital | €4,183,541 |
| Davin | €3,976,070 |
| Next Level | €3,582,642 |
| Mill River | €3,544,455 |
| Tarvos | € 2,034,929 |
| Clove | €1,992,149 |
| Mazagran | €1,961,300 |
| Calypso | €1,862,268 |
| Pleasant Lake | €1,839,355 |
| Spirit on the Water | €1,801,572 |
| Batavia | €1,198,961 |
| Carrick | €1,154,214 |
| Alden | €1,129,806 |
| Azalea | €1,096,756 |
| Bowline | €1,082,529 |
| **Total** | **€75,792,383** |

60.      On information and belief, amounts received by the Refund Claimants were promptly distributed to other participants in the fraud, thereby confirming the fraudulent nature of the scheme.

61.     The scheme to defraud FPSF Belgium continued until at least November 2015. At that time, FPSF Belgium was informed by the Belgian Federal Police of an international criminal investigation concerning refund claims associated with certain reclaim agents, including Acupay and Goal Taxback.  At that time, as a precautionary measure, FPSF Belgium suspended payment of refund requests involving those reclaim agents.

62.     From November 2015 through 2020, FPSF Belgium knew that the Belgian Federal Police were investigating possible fraud with respect to refund requests made to FPSF Belgium.  During this time, FPSF Belgium acted with reasonable diligence to investigate the facts, including by cooperating with the investigation by the Belgian Federal Police, providing extensive files to the Belgian Federal Police and liaising with the Belgian Federal Police concerning the investigation on a regular basis.  During this time, FPSF Belgium was aware that it may have been defrauded by some tax refund claimants, but it did not know which specific transactions were fraudulent or which claimants or individuals were involved.

63.     In late 2020, FPSF Belgium was given access to portions of the confidential investigation file of the Belgian Federal Police.  Through analysis of these records, FPSF Belgium was able to conclude, for the first time, that refund claims made by the Refund Claimants were fraudulent.  On information and belief, the investigation by the Belgian Federal Police remains ongoing and no charges have yet been filed.

### Causes of Action

### First Claim for Relief - Fraud
(Against Traden, Raubritter, Rajan, Remece, Laegeler, 2321 Capital, DFL,
Davin, Mill River, Tarvos, Clove, Mazagran, Pleasant Lake,
Carrick, Alden, Azalea, Bowline and LaRosa)

64.     FPSF Belgium repeats and realleges Paragraphs 1 through 63 above as if fully set forth herein.

65.     Traden, Raubritter, Rajan, Remece, Laegeler, DFL, 2321 Capital, Davin, Mill River, Tarvos, Clove, Mazagran, Pleasant Lake, Carrick, Alden, Azalea, Bowline and LaRosa caused one or more refund claims to be submitted to FPSF Belgium.  Defendants Traden, Raubritter, Rajan, Remece, Laegeler, DFL, 2321 Capital, Davin, Mill River, Tarvos, Clove, Mazagran, Pleasant Lake, Carrick, Alden Azalea and Bowline caused refund claims to be submitted in their own names.  LaRosa was involved in the refund claims for each of the these Defendants, as well as the refund claims for non-parties RJM Capital, Bernina, Next Level, Calypso, Spirit on the Water and Batavia.

66.     These refund claims contained numerous materially false and misleading statements.

67.     Each of these Defendants knew that statements in the refund claims were false and/or acted recklessly as to the statements' falsity.  Each of these Defendants knowingly made these statements, and/or caused them to be made, and/or conspired to have them made.  Each of these Defendants did so with the fraudulent intent to induce FPSF Belgium to make the requested payments.

68.     In reliance on these fraudulent misrepresentations, FPSF Belgium paid a total of €75,792,383 to the Refund Claimants.  FPSF Belgium suffered damage in that amount, plus interest, as well as the costs of investigating and uncovering Defendants' fraud in an amount to be determined at trial.

69.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, and therefore FPSF Belgium is entitled to punitive damages.

**Second Claim for Relief – Aiding and Abetting Fraud**
(Against FGC Securities and Wheeler)

70.     FPSF Belgium repeats and realleges Paragraphs 1 through 69 above as if fully set forth herein.

71.     Traden, Raubritter, Rajan, Remece, Laegeler, DFL, 2321 Capital, Davin, Mill River, Tarvos, Clove, Mazagran, Pleasant Lake, Carrick, Alden, Azalea, Bowline and LaRosa perpetrated a fraud on FPSF Belgium.

72.     FGC Securities and Wheeler provided substantial assistance to advance the fraud's commission.  Specifically, FGC Securities and Wheeler provided purported share purchase documentation that was submitted to FPSF Belgium for Traden, Raubritter, Rajan, Remece, DFL, 2321 Capital and Davin.

73.     On information and belief, each of these Defendants had actual knowledge of the fraudulent scheme.

74.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, FPSF Belgium has suffered substantial damages.

75.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, and therefore FPSF Belgium is entitled to punitive damages.

**Request for Relief**

WHEREFORE, Plaintiff FPSF Belgium requests that this Court enter judgment in its

favor against Defendants as follows:

a)  An award of damages in an amount of no less than €75,792,383, plus pre-
    judgment interest, and further damages in an amount to be determined at trial;

b)  Punitive damages;

c)  The costs and fees of this action;

d)  All other and further relief that is just and proper.

Dated:  January 21, 2022
        New York, New York

<div style="margin-left: 40%">

CLIFFORD CHANCE US LLP


 s/ Jeff E. Butler

Jeff E. Butler
John P. Alexander
Meredith George
Robert Price
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Plaintiff Kingdom of Belgium,*
*Federal Public Service Finance*

</div>

**Exhibit A - Traden**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 11/27/2013 | Umicore | €50,000 |
| 12/4/2013 | Anheuser/Busch Inbev | €1,317,500 |
| 12/4/2013 | Belgacom SA | €735,000 |
| 12/4/2013 | Telenet | €535,162 |
| 12/4/2013 | KBC | €410,000 |
| 12/4/2013 | Ageas | €321,000 |
| 12/4/2013 | Solvay | €195,000 |
| 12/4/2013 | Delhaize Group | €185,500 |
| 12/4/2013 | UCB | €137,700 |
| 12/4/2013 | Umicore | €105,000 |
| 12/4/2013 | Ackermans & Van Haaren | €64,295 |
| 5/1/2014 | Belgacom SA | €173,086 |
| 5/7/2014 | Groupe Bruxelles Lambert | €140,034 |
| 5/28/2014 | Anheuser/Busch Inbev | €677,634 |
| 5/28/2014 | Ageas | €207,444 |
| 11/13/2014 | Anheuser/Busch Inbev | €777,750 |

**Exhibit B - Raubritter**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 1/22/2013 | Proximus | €283,500 |
| 7/15/2013 | Solvay | €187,500 |
| 10/23/2013 | Ageas | €335,660 |
| 11/5/2013 | Anheuser/Busch Inbev | €1,666,000 |
| 11/5/2013 | Telenet | €498,674 |
| 11/5/2013 | UCB | €159,375 |
| 11/5/2013 | Umicore | €56,250 |
| 11/19/2013 | KBC | €325,000 |
| 11/19/2013 | Solvay | €157,500 |
| 11/19/2013 | Mobistar | €96,750 |
| 11/19/2013 | Bekaert | €45,688 |
| 11/25/2013 | Ackermans & Van Haaren | €38,410 |
| 12/17/2013 | Umicore | €53,750 |
| 12/19/2013 | Proximus | €798,000 |
| 6/12/2014 | Proximus | €161,167 |
| 6/13/2014 | Groupe Bruxelles Lambert | €138,067 |
| 7/23/2014 | Ageas | €183,055 |
| 7/24/2014 | Anheuser/Busch Inbev | €748,385 |

**Exhibit C – RJM Capital**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 11/27/2013 | Umicore | €96,250 |
| 12/4/2013 | Anheuser/Busch Inbev | €1,657,500 |
| 12/4/2013 | Telenet | €656,788 |
| 12/4/2013 | Proximus | €504,000 |
| 12/4/2013 | Ageas | €339,000 |
| 12/4/2013 | Delhaize Group | €176,750 |
| 12/4/2013 | UCB | €145,350 |
| 12/4/2013 | Solvay | €127,500 |
| 12/4/2013 | Umicore | €101,250 |
| 12/4/2013 | Mobistar | €83,250 |
| 12/4/2013 | Ackermans & Van Haaren | €66,800 |
| 12/4/2013 | Bekaert | €54,188 |
| 5/1/2014 | Proximus | €143,556 |
| 5/7/2014 | Groupe Bruxelles Lambert | €118,046 |
| 5/28/2014 | Anheuser/Busch Inbev | €593,532 |
| 5/28/2014 | Ageas | €205,142 |
| 7/1/2014 | Anheuser/Busch Inbev | €795,450 |

**Exhibit D – Rajan**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 2/14/2013 | Proximus | €243,000 |
| 7/15/2013 | Solvay | €180,000 |
| 11/5/2013 | Anheuser/Busch Inbev | €1,445,000 |
| 11/5/2013 | Telenet | €608,138 |
| 11/5/2013 | UCB | €155,550 |
| 11/5/2013 | Umicore | €82,500 |
| 11/19/2013 | KBC | €340,000 |
| 11/19/2013 | Solvay | €122,500 |
| 11/25/2013 | Delhaize Group | €185,500 |
| 11/25/2013 | Ackermans & Van Haaren | €54,275 |
| 12/16/2013 | Umicore | €77,500 |
| 12/19/2013 | Proximus | €945,000 |
| 6/12/2014 | Proximus | €165,935 |
| 6/13/2014 | Groupe Bruxelles Lambert | €128,728 |
| 7/23/2014 | Ageas | €212,751 |
| 7/24/2014 | Anheuser/Busch Inbev | €671,363 |

**Exhibit E – Remece**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 11/27/2013 | Umicore | €55,000 |
| 12/3/2013 | Telenet | €474,348 |
| 12/3/2013 | KBC | €405,000 |
| 12/3/2013 | Ageas | €234,000 |
| 12/3/2013 | Delhaize Group | €157,500 |
| 12/3/2013 | UCB | €133,875 |
| 12/3/2013 | Mobistar | €76,500 |
| 12/3/2013 | Ackermans & Van Haaren | €70,975 |
| 12/3/2013 | Bekaert | €39,312 |
| 12/4/2013 | Anheuser/Busch Inbev | €1,742,500 |
| 12/4/2013 | Umicore | €60,000 |
| 5/1/2014 | Proximus | €187,827 |
| 5/7/2014 | Groupe Bruxelles Lambert | €109,256 |
| 5/28/2014 | Anheuser/Busch Inbev | €593,261 |
| 5/28/2014 | Ageas | €197,849 |
| 7/1/2014 | Anheuser/Busch Inbev | €767,550 |

**Exhibit F – Laegeler**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 10/24/2013 | KBC | €402,500.00 |
| 10/24/2013 | UCB | €177,225.00 |
| 10/24/2013 | Umicore | €91,875.00 |
| 10/24/2013 | UMICORE | €87,500.00 |
| 11/5/2013 | Anheuser/Busch Inbev | €1,691,500.00 |
| 11/5/2013 | Telenet | €571,649.92 |
| 11/5/2013 | Ageas | €369,000.00 |
| 11/19/2013 | Solvay | €167,500.00 |
| 11/19/2013 | Bekaert | €40,375.00 |
| 11/25/2013 | Delhaize Group | €184,800.00 |
| 11/25/2013 | Ackermans & Van Haaren | €40,915.00 |
| 6/13/2014 | Proximus | €187,898.34 |
| 6/13/2014 | Groupe Bruxelles Lambert | €126,206.64 |
| 7/23/2014 | Ageas | €195,065.50 |
| 7/24/2014 | Anheuser/Busch Inbev | €762,195.76 |

**Exhibit G – Bernina**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 10/23/2013 | Ageas | €291,000 |
| 11/5/2013 | Anheuser/Busch Inbev | €1,521,500 |
| 11/5/2013 | Telenet | €595,976 |
| 11/5/2013 | UCB | €154,275 |
| 11/5/2013 | Umicore | €83,750 |
| 11/19/2013 | KBC | €352,500 |
| 11/19/2013 | Solvay | €177,500 |
| 11/19/2013 | Mobistar | €94,500 |
| 11/19/2013 | Bekaert | €58,437 |
| 11/25/2013 | Delhaize Group | €177,800 |
| 11/25/2013 | Ackermans & Van Haaren | €65,965 |
| 12/18/2013 | Umicore | €78,750 |
| 6/13/2014 | Proximus | €154,925 |
| 6/13/2014 | Groupe Bruxelles Lambert | €115,625 |
| 7/23/2014 | Ageas | €182,287 |
| 7/24/2014 | Anheuser/Busch Inbev | €793,825 |

**Exhibit H – DFL**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 10/24/2013 | Telenet | €620,300 |
| 10/24/2013 | UCB | €181,050 |
| 10/24/2013 | Bekaert | €36,125 |
| 11/5/2013 | Anheuser/Busch Inbev | €1,423,750 |
| 11/5/2013 | Ageas | €306,000 |
| 11/19/2013 | KBC | €397,500 |
| 11/19/2013 | Solvay | €182,500 |
| 11/25/2013 | Delhaize Group | €137,200 |
| 11/25/2013 | Ackermans & Van Haaren | €56,362 |
| 6/12/2014 | Proximus | €168,680 |
| 6/13/2014 | Groupe Bruxelles Lambert | €124,694 |
| 7/23/2014 | Ageas | €186,904 |
| 7/24/2014 | Anheuser/Busch Inbev | €784,267 |

**Exhibit I – 2321 Capital**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 10/23/2013 | Ageas | €261,000 |
| 11/5/2013 | Anheuser/Busch Inbev | €1,326,000 |
| 11/5/2013 | Telenet | €498,674 |
| 11/5/2013 | Umicore | € 84,375 |
| 11/18/2013 | KBC | €417,500 |
| 11/19/2013 | Mobistar | €92,250 |
| 11/25/2013 | Delhaize Group | €172,200 |
| 11/25/2013 | Ackermans & Van Haaren | €46,760 |
| 12/18/2013 | Umicore | €80,000 |
| 6/12/2014 | Proximus | €163,599 |
| 6/13/2014 | Groupe Bruxelles Lambert | €128,058 |
| 7/23/2014 | Ageas | €211,457 |
| 7/24/2014 | Anheuser/Busch Inbev | €701,668 |

**Exhibit J – Davin**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 10/24/2013 | Anheuser/Busch Inbev | €1,721,250 |
| 10/24/2013 | UCB | €126,225 |
| 10/24/2013 | Umicore | €97,500 |
| 11/19/2013 | KBC | €375,000 |
| 11/19/2013 | Solvay | €120,000 |
| 11/19/2013 | Bekaert | €51,000 |
| 11/25/2013 | Delhaize Group | €176,750 |
| 11/25/2013 | Ackermans & Van Haaren | €43,837 |
| 12/17/2013 | Umicore | €92,500 |
| 6/12/2014 | Proximus | €147,989 |
| 6/13/2014 | Groupe Bruxelles Lambert | €143,342 |
| 7/23/2014 | Ageas | €188,078 |
| 7/24/2014 | Anheuser/Busch Inbev | €692,599 |

**Exhibit K – Next Level**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 11/5/2013 | Anheuser/Busch Inbev | €1,572,500 |
| 11/5/2013 | UCB | €167,025 |
| 11/5/2013 | Umicore | €61,875 |
| 11/19/2013 | KBC | €367,500 |
| 11/19/2013 | Bekaert | €55,250 |
| 11/25/2013 | Delhaize Group | €168,000 |
| 11/25/2013 | Ackermans & Van Haaren | €60,120 |
| 12/16/2013 | Umicore | €56,250 |
| 6/13/2014 | Groupe Bruxelles Lambert | €115,072 |
| 7/23/2014 | Ageas | €194,718 |
| 7/24/2014 | Anheuser/Busch Inbev | €610,917 |
| Undated | Proximus | €153,416 |

**Exhibit L – Mill River**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 8/31/2012 | Delhaize Group | €1,232,000 |
| 9/10/2012 | Umicore | €150,000 |
| 11/26/2013 | Solvay | €165,000 |
| 5/1/2014 | Proximus | €156,532 |
| 5/7/2014 | Groupe Bruxelles Lambert | €141,718 |
| 5/28/2014 | Anheuser/Busch Inbev | €742,683 |
| 5/28/2014 | Ageas | €166,922 |
| 7/1/2014 | Anheuser/Busch Inbev | €789,600 |

**Exhibit M – Tarvos**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 5/1/2014 | Proxiumus | €167,276 |
| 5/7/2014 | Groupe Bruxelles Lambert | €139,220 |
| 5/28/2014 | Anheuser/Busch Inbev | €751,588 |
| 5/28/2014 | Ageas | €202,845 |
| 7/1/2014 | Anheuser/Busch Inbev | €774,000 |

**Exhibit N – Clove**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 5/1/2014 | Proximus | €150,832 |
| 5/7/2014 | Groupe Bruxelles Lambert | €139,242 |
| 5/28/2014 | Anheuser/Busch Inbev | €712,056 |
| 5/28/2014 | Ageas | €204,169 |
| 7/1/2014 | Anheuser/Busch Inbev | €785,850 |

**Exhibit O - Mazagran**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 5/1/2014 | Proximus | €156,678 |
| 5/7/2014 | Groupe Bruxelles Lambert | €128,288 |
| 5/28/2014 | Anheuser/Busch Inbev | €724,401 |
| 5/28/2014 | Ageas | €164,583 |
| 7/1/2014 | Anheuser/Busch Inbev | €787,350 |

**Exhibit P – Calypso**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 5/1/2014 | Groupe Bruxelles Lambert | €153,235 |
| 5/7/2014 | Anheuser/Busch Inbev | €113,965 |
| 5/28/2014 | Ageas | €615,722 |
| 5/28/2014 | Anheuser/Busch Inbev | €193,196 |
| 7/1/2014 | Groupe Bruxelles Lambert | €786,150 |

**Exhibit Q – Pleasant Lake**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 5/1/2014 | Proximus | €179,376 |
| 5/7/2014 | Groupe Bruxelles Lambert | €114,971 |
| 5/28/2014 | Anheuser/Busch Inbev | €605,604 |
| 5/28/2014 | Ageas | €174,554 |
| 7/1/2014 | Anheuser/Busch Inbev | €764,850 |

**Exhibit R – Spirit on the Water**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 10/23/2013 | Ageas | €252,000 |
| 11/19/2013 | Mobistar | €114,750 |
| 11/19/2013 | Bekaert | €46,750 |
| 11/25/2013 | Ackermans & Van Haaren | €39,245 |
| 12/17/2013 | Umicore | €66,250 |
| 6/12/2014 | Proximus | €159,803 |
| 6/13/2014 | Groupe Bruxelles Lambert | €123,983 |
| 7/23/2014 | Ageas | €217,838 |
| 7/24/2014 | Anheuser/Busch Inbev | €780,953 |

**Exhibit S – Batavia**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 6/12/2014 | Proximus | €149,632 |
| 6/13/2014 | Groupe Bruxelles Lambert | €118,554 |
| 7/23/2014 | Ageas | €176,657 |
| 7/24/2014 | Anheuser/Busch Inbev | €754,118 |

**Exhibit T – Carrick**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 6/12/2014 | Proximus | €146,945 |
| 6/13/2014 | Groupe Bruxelles Lambert | €140,813 |
| 7/23/2014 | Ageas | €218,684 |
| 7/24/2014 | Anheuser/Busch Inbev | €647,772 |

**Exhibit U – Alden**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 6/12/2014 | Proximus | €142,956 |
| 6/13/2014 | Groupe Bruxelles Lambert | €141,585 |
| 7/23/2014 | Ageas | €172,274 |
| 7/24/2014 | Anheuser/Busch Inbev | €672,991 |

**Exhibit V – Azalea**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 6/12/2014 | Proximus | €177,994 |
| 6/13/2014 | Groupe Bruxelles Lambert | €111,163 |
| 7/23/2014 | Ageas | €215,484 |
| 7/24/2014 | Anheuser/Busch Inbev | €592,115 |

**Exhibit W – Bowline**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 6/13/2014 | Proximus | €167,389 |
| 6/13/2014 | Groupe Bruxelles Lambert | €117,387 |
| 7/23/2014 | Ageas | €188,548 |
| 7/24/2014 | Anheuser/Busch Inbev | €609,205 |